Good morning. My name is John Lambros. I'm here on behalf of Mr. Tony Slack. Obviously as the Court is aware, the certified issues in this case are fairly interrelated, but I think that in spite of the fact that the lower court sort of addressed them out of order, in my opinion, I think I'll start with the substantive issues of the Sixth Amendment in effective assistance of counsel. And then address myself to the failure to grant the evidentiary issue, excuse me, hearing on the substantive claims. The ineffective assistance claim deals with two separate aspects. The first one is obviously whether or not counsel was ineffective for failing to not really do much in terms of trying to find information against Mr. Bay, Kamal Bay, who also went by Molly Bow and I can't remember if it was Dwayne Latimer or last name Latimer. It would not have been very difficult. All counsel would have needed to do is what any, I think, reasonable defense attorney practicing law in Las Vegas would do, and that is not take the prosecutor at their word as to whether or not all of the deals that were disclosed at the preliminary hearing or the deal that was disclosed at the preliminary hearing was the sum and substance of all deals. Mr. Lambrose, the evidence which, if it was evidence, which counsel could have investigated and did not bring forward was six prior arrests of Witness Bay. Yes. Not convictions. No. And I never, ever represented that they were convictions, Judge Bea, but they were. How would that have gotten into evidence as against the witness? Well, pending charges against a and they were pending. I read them as arrests which were no longer pending. Oh, no, no, no. They were they were still pending. The the two narcotics charges and the possession of a unlawful possession of a vehicle charge. All three of those were felonies, stolen vehicle charge, and they were still pending and they remain pending during the preliminary hearing, which was, I believe, in December or November of 89. And then the trial, which was very short. Thanks for bringing it to my attention. Yeah. And remained pending, in fact, until like 1991. And as a footnote to that, they were Mr. Bay was being represented by the Clark County Public Defender's Office, who was also representing Mr. Slack. So, you know, it wouldn't have taken a lot of investigation to find out that Mr. Bay was definitely in trouble with the law. So let's suppose that we've gotten all of this, this evidence in. None of those convictions really go. And there isn't there's none of that supplies additional evidence of a connection or a motive to lie to Mr. Bay. The only thing that you really can discredit, the only thing that Bay seems to be useful for is the is the idea that Slack exits the room with a smirk on his face, with a with a slight the curl of his the curl of his lip. Is there something else that I'm missing here? Is there anything else that that Kamal Bay is useful for here? Absolutely. And I think that I think what you can what you can find in the record that demonstrates what I'm going to tell you starts with the state's theory of the case, as he said, as Mr. Harmon sets up in his opening statement excerpts at 128 to 140. He he characterizes Mr. Bay as one of the three primary individuals with knowledge of the case, one of whom was dead, Ms. Holmes. So he puts him with Mr. Slack, Ms. Holmes and Mr. Bay. They are the three primary people with knowledge of the case. And Mr. Harmon, this case proceeded as a what colloquial colloquially we call in Nevada an open murder charge. But really, Mr. Harmon, the prosecutor in this case, never asked the jury for a first degree murder verdict. The issue throughout the course of the proceedings, starting with opening statement through state's final rebuttal closing, was whether or not this was an involuntary manslaughter or a second degree murder. So now, to get specifically to your question, Judge Bybee, there were five main areas that I think Mr. Bay's testimony locked Mr. Slack's state of mind, i.e., malice, into the jury's minds. And that was that the gun, according to Mr. Bay, was on safety, requiring Mr. Slack to take it off of safety in order to fire it.  Now, there was also a state witness that testified to that, a forensic police officer. But in cross-examination, that officer also admitted that the pressure for the trigger or the trigger could have also been set off or pulled by, in accordance with Mr. Slack testified that when he was playing around with it and Alana grabbed the barrel, pulling the barrel would have caused Mr. Slack to pull the trigger. That Mr. Slack ran out of the room with the gun and that Mr. Slack admitted to Mr. Bay or, excuse me, to Mr. Bay that he was threatening Ms. Holmes with the gun. So Mr. Bay brought a lot to the party. And in his closing argument, the prosecutor also emphasizes that Mr. Bay's testimony was critical to whether or not this act, this was an act done with malice. And, again, it was never really a first-degree murder case. There was never any evidence of premeditation and deliberation. The key was, were, you know, is Mr. Slack's testimony credible, jurors? Now, admittedly, Mr. Slack made statements prior to his testimony to police officers that were inconsistent with his testimony. But the only live witness, if you will, that could refute Mr. Slack's testimony was Mr. Bay. And he had at least, and, again, this sort of dovetails into the evidentiary hearing issue. And I guess really it's probably a good point to just talk about that very briefly in terms of why I think what was pled was enough to give us an evidentiary hearing. First of all, it's a pre-epic case. So the only two things I needed to show was that if these facts that were pled were true, that the outcome was that it was reasonable to believe that Mr. Slack would have prevailed. And what I'm talking about is prevailing on a theory of involuntary manslaughter. That's part one. Part two is, did Mr. Slack get an evidentiary hearing in State court? He didn't. And I think I chronicled the rather perfunctory nature of the State proceedings in the briefing, but it's worthy of noting just one more time before this Court. Mr. Slack's entire post-conviction proceeding lasted for six weeks. He was improper person. He was 21 years old. He asked for a lawyer, didn't get a lawyer. He was in Ely, Nevada. Anybody familiar with Nevada knows that that's a long ways from Las Vegas, about 230 miles. The only hearing, and I use that word loosely, that was ever conducted in post-conviction was ex parte. It was the judge. It was the prosecutor. It wasn't even the trial judge. It was another judge. And Mr. Slack was in Ely not even knowing that this was going on. How do we know that? Because he filed a reply to the State's answer to his post-conviction petition after his relief had been denied in this ex parte hearing. And then to add insult to all of this injury, the trial judge, and, again, this happens every day in Clark County, so it doesn't come as a shock to me, but it is, I think, an insult. The trial judge had the prosecutor draft the order without even running it by Mr. Slack. So that's what happened in state court. Needless to say, there was no state evidentiary hearing worthy of noting or worthy of any federal deference. So where did the court below err? The court below. When you're talking about the hearing, you're talking about when you say post-conviction, you are talking about direct appeal. We're not talking about some kind of a habeas. No, I'm talking about a trial-level habeas corpus action that he filed in. And that's different from the direct appeal? Yes. Okay. Did he take a direct appeal? Yes, he took a direct appeal. Was he counseled on direct appeal? Yes, he was. Okay. Did he raise these questions on direct appeal? He didn't raise his ineffective assistance questions because those were outside the scope of the direct appeal record. And in Nevada, in order to develop those issues in a collateral proceeding, they need to be brought the way he brought them. What issues did he raise on direct appeal? Insufficiency of the evidence? Yes, insufficiency of the evidence. He challenged the reasonable doubt instruction. He challenged the premeditation and deliberation instruction. Why counsel did that, I have no idea, since it was a second-degree murder conviction. And he also challenged whether or not the State should have been able to bring in evidence of sexual activity between Mr. Slack and Ms. Holmes. Those were the issues raised on direct appeal. The meat of this case was raised in proper person by Tony Slack after the direct appeal had been concluded in a timely fashion. He didn't get any lawyering on appeal from his post-conviction relief petition. The Nevada Supreme Court summarily affirmed without ordering briefing and without giving him an attorney. So the collateral development of these facts was absolutely nil. Now, flat, you know, fast-forward into Federal court. We're pre-AEDPA. We make the request for an evidentiary hearing. The law in this circuit is to obtain an evidentiary. I'm reading from Phillips v. Woodford, 267 Fed 3rd at page 276. In order to obtain an evidentiary hearing, the Petitioner's allegations, if proved, must raise a colorable claim that his counsel's performance fell below reasonable standards, as well as a colorable claim that, but for counsel's ineffective performance, there is a reasonable probability that the outcome of the proceedings would have been different. A colorable claim. We don't even have to show a Strickland claim. We don't even have to show that we would win claim. Just that, look, there is significant smoke here. We have Kamal Bay with all these charges pending. And the district, the court below Judge Hagan, when he ruled on this decision, he ruled as a matter of law that even taking these allegations and taking them as true, it wouldn't have, for lack of a better way of characterizing it, it would not have affected the outcome. And it's my position that that decision, when measured under the abuse of discretion standard, is reversible, because it's fairly well settled that an abuse of discretion standard is the court, the trial-level court abuses his or her discretion if, in making that decision, the trial court makes an error of law. Well, the error of law was, were several parts. First of all, he didn't, the court did not even view this in terms of whether or not colorable claims had been made. Second of all, the court just summarily decided, and this is, I think, critical, just summarily decided that notwithstanding all of this additional impeachment evidence, notwithstanding the fact that this colorable claim could have, and again, I'm speculating here, but I'm free to do that since he's never had an evidentiary hearing, could have led to evidences of side deals that were never disclosed to defense counsel. Don't worry about it. We'll just hold this case in abeyance until after you testify, these three felony charges. Now, and the other thing that the district court, the court below, just summarily concluded was, well, these were all juvenile cases, so he would have just been punished as a juvenile again. Well, that was, that was incorrect, and it's my understanding in Nevada, and I'm fairly certain of this, that at the time Mr. Bay was 17, that although he was not an adult, he could have been certified and treated as an adult. So what did Mr. Bay get out of all of this? He got six months in Elko, the juvenile detention center. Now, we're talking about a kid who, at age 17, admitted at his direct testimony that he'd been a member of a gang for seven years, and in some ways that's fairly touching. Anybody that has children, just the thought of having a 10-year-old son as a gang member is fairly daunting. But Kamal just, you know, no big deal. Is Tony a gang member? No, he's not a gang member. Six months in Elko is no big deal, but being certified as an adult and having to do some hard time, that would be a big deal. What does he need to get away from having to do it? Give the prosecutor what the prosecutor needs. So all of the felonies were held in abeyance, and then, as we point out in the brief, they were dismissed ultimately after the trial, about a year after the trial. What does all this mean? What all this means is that Tony Slack, I don't think he got a jury trial. There's no question about it. He got a chance to testify. He got a chance to look at the jury and tell the jury his story. But he didn't really get an effective chance to have the jury understand and believe his testimony with regard to whether or not this was indeed an act that he committed as a 19-year-old man, man-child, without malice. And he didn't get a chance to do that because he didn't get a chance to impeach Bay enough. Tony's still in prison. His bail status is that he's served about 16 calendar years. He's on his ñ in Nevada, he got two consecutive life sentences because the use of the deadly weapon automatically is a consecutive sentence. He's on that second sentence. He's been denied parole, and he will continue on that second sentence for his first parole. So he's going to continue to do a lot more time. And believe me, and this is one thing that I think his lawyer said during the trial. It's something that I would say to this Court. We're not saying that Tony Slack should not have been punished. What we're saying is that Tony Slack didn't get a fair trial. And he didn't get a fair trial because he just ñ because his lawyer didn't do what his lawyer needed to do to flesh out what the entire scope of Bay's background, even if there weren't any side deals. And again, I'm not ñ I want to make it very clear to this Court that I'm not representing that there were side deals. We just don't know because we didn't get a chance to flesh that out. But even if there weren't, the jury didn't hear about these pending charges, and I think that that's compelling enough because really, if it all boiled down to is he guilty of second-degree murder or is he guilty of involuntary manslaughter, this jury deliberated something I was just looking up this morning. This jury deliberated about six hours. And I get that from the court minutes that are in the excerpts of record at page 120. They were deliberating between voluntary manslaughter ñ excuse me, involuntary manslaughter with the use of a deadly weapon and second-degree murder with the use of a deadly weapon. And if Tony had been convicted of the involuntary manslaughter with the use of a deadly weapon, just off the top of my head, given how much time he served in prison, I think he would have almost completed his prison sentence by now. That's how compelling it is. And if the Court doesn't have any other questions. Kennedy. Mr. Lambros, I do have a question. Would you please tell us in view of the statements which Slack made to the police ñ not very helpful ñ the second prong of the Strickland rule comes into play. Yes. I mean, can you show that the failure to impeach Bay is the reason why he was convicted but for Bay's impeachment? Admittedly, the statements that Mr. Slack made to the police ñ and there were three, the telephone call where he incriminates Bay, the first statement where he says Ms. Holmes had the weapon and she was the one that was pointing it at him, and then finally his third statement, which was consistent with his trial testimony. They're not good. But I think that ñ I think that, again, this is what ñ this is what's difficult and this is what an appellate court obviously is obliged to do. But if you weigh this as an appellate court viewing the evidence and the evidence's effect on the jury, I think that there is a reasonable probability that if the jury had heard that these charges ñ that Bay was perhaps going to get a more lenient deal because he had all of these other charges pending, coupled with ñ and it's something I haven't had a real chance to talk about ñ coupled with the fact that the prosecutor did make some hay with Tony's ostensible sexual relationship with the victim, and the prosecutor made that point in the context of trying to paint Tony as a predator as well as trying to show the jury that, look, you know, he's lied about his sexual relationships with this victim, and if he's lied about that, he's going to lie to you about all these other things. That was sort of the theme of rebuttal closing was that he's a liar. He's lied to the police. He's lied to you about whether or not he's had sex with the victim. He's ñ you just can't believe him. And so I think that ñ that, obviously, I'm not going to stand up here and say that those statements that he made to the police were not harmful. But I just still don't think that he got a fair shake with regard to whether or not it's reasonably probable that the outcome would have been different given the fact that the sexual evidence came in and the potential impeachment evidence of Bay did not come in. Okay. Thank you, Mr. Lambrou. Thank you very much. Ms. Proctor. Good morning. May it please the Court. My name is Heather Proctor, Deputy Attorney General with the State of Nevada. I have the privilege of representing the Respondents in this matter. Initially, regarding the ineffective assistance of counsel claim, SLAC brings two bases for that claim. Under the investigation, failure to investigate benefits bargains and agreements between the State and Bay. Regarding the two pending felony charges, the State ñ excuse me, SLAC has provided no evidence whatsoever beyond speculation that there was any additional deal beyond what Bay himself testified to at both the preliminary hearing and the trial that in exchange for his truthful testimony, the State agreed not to pursue charging him as an adult in the accessory to murder conviction. There ñ the charges that were pending at the time of the preliminary hearing and the trial which counsel referenced were not dismissed until nearly a year after the jury trial. In December of 1991, the trial was in January of 1991. Remind me, I thought that there was a provision in Title 28 that applies in post-EDPA case ñ or pre-EDPA cases, which essentially requires that showing to be made before the Federal District Court has to order an evidentiary hearing. Am I remembering the law correctly? I'm not familiar with that aspect at all, Your Honor. All right. Because obviously the petitioner is claiming here that Judge Hagen erred in not ordering an evidentiary hearing in order to help him discover whether there was such evidence. But I thought ñ and maybe it's case law ñ I thought there has to be a preliminary showing that there would be such evidence and that you can't simply ask for a hearing in the hope of conducting a fishing expedition that will perhaps reveal evidence that might be false. That sounds familiar, Your Honor. I'm not familiar with the exact case law. All right. Well, I don't have a Title 28 in front of me right now, but I think there is a provision that ñ I can check it later. In addition, regarding the evidentiary hearing, SLAC claims that the investigation that he states his counsel should have conducted regarding the two felony charges that were pending regarding the deal, the district court found that they were speculation at best, that there was no basis for any kind of conclusion or even suggestion that there was, in fact, a deal for a benefit in exchange for testimony regarding two pending felony convictions. So the district court did find that under Townsend, which was the pre-EPA standard, even if those allegations were true, there would not be any basis for an impoundment to relief because of the sufficiency of the evidence against SLAC. In addition, it would have been used against Bay regarding his credibility. His credibility was already greatly in question before this jury. Bay testified that he used multiple aliases not only in life but also with the police. He testified that he essentially lied about his date of birth to the police because he was initially detained in an adult facility but was not moved to a juvenile facility until his sister contacted the police with his correct date of birth. In addition, Bay testified that he completely fabricated his initial statements to the police. Only his statement to the police after SLAC turned himself in did he state that he was actually present and identified SLAC as the shooter. In addition, Bay testified that he assisted in hiding the murder weapon and that he was a gang member. All of these together suggest that Bay's credibility was not terribly strong in front of the jury already. Whether or not he lied about his social security number, which is one basis that the defense should have located, or if he had other prior arrests, which, again, would not have been admissible, or if he made this additional deal, he already testified that he was being charged as an accessory to murder, that he'd been convicted as an accessory to murder as a juvenile, and that the only deal was that in exchange for his testimony, he would not be certified as an adult. So in terms of the evidentiary hearing, even if all of the allegations were true, all of the additional investigation that SLAC claims counsel should have conducted were true, it would not have changed the outcome of the trial. Bay's credibility was already greatly in question and would not have been affected by the additional information. Unless the Court has any other questions. No. Anything? I think not. Thank you very much. Mr. Lambros, do you have some rebuttal? Unless the Court has any questions, I don't have any rebuttal. The only thing I would say, Your Honor, is with regard to your question concerning pre-AEDPA requirements to make showings, I don't know that off the top of my head. Is there a provision? I thought there was a statutory provision. Maybe I'm thinking of case law. Well, the statutory provision that I can think of, pre-AEDPA, was, again, I believe, 2254 D or E, and then they had the Townsend v. Sane factors. Factors. Maybe that's where I'm thinking. And maybe it's in there, and I apologize for not knowing that off the top of my head. But if the Court ---- Well, frankly, we hear so many post-AEDPA cases. This is an unusual one, obviously because of its procedural history and its age. The case law is ñ the pre-AEDPA case law is fairly uniform. It's the two-part test. If the facts are true, then you should get a hearing. You know, I mean, excuse me. If the facts as taken are true, you should get a hearing. It could be established. And you didn't get something, and you didn't get a hearing in State court. So other than that, I apologize for not knowing that. That's all right. I'll check it, and I may be just misrecollecting a post-AEDPA requirement. But I think it is in that statute, and I'll look at it. All right. Thank you, counsel. The case was very well argued, and it is submitted for decision. We'll get you a decision as soon as we can. That concludes our calendar for the morning, and we'll be adjourned until 9 a.m. tomorrow morning.  Thank you.
judges: Tallman, Bybee, Bea